UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

                v.                          19 cr 342(LGS)(KHP)

JOSEPH BAGAGLIA,

                Defendant.
                                            Plea
------------------------------x

                                            New York, N.Y.
                                            September 16, 2020
                                            11:07 a.m.

Before:


                    HON. KATHARINE H. PARKER,

                                            U.S. Magistrate Judge

                        APPEARANCES

AUDREY STRAUSS
        Acting United States Attorney for the
        Southern District of New York
BY:  SARAH L. KUSHNER
        Assistant United States Attorney

DAVID E. PATTON
        Federal Defenders of New York, Inc.
        Attorney for Defendant
BY:  CLAY H. KAMINSKY
        Assistant Federal Defender

1          (Case called)

2          THE DEPUTY CLERK:  Starting with the government, can

3   you please make your appearance for the record.

4          MS. KUSHNER:  Good morning, your Honor.  Sarah Kushner

5   for the government.

6          THE COURT:  Good morning.

7          THE DEPUTY CLERK:  Counsel for the defendant, can you

8   please make your appearance for the record.

9          MR. KAMINSKY:  Yes.  Good morning, your Honor.  This

10  is Clay Kaminsky from the Federal Defenders for Mr. Bagaglia.

11         THE COURT:  Good morning.  And good morning,

12  Mr. Bagaglia.  I'm Judge Parker.  I believe we met once before.

13  We are here for a plea allocution in this matter.

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  Mr. Bagaglia, can you hear me clearly?

16         THE DEFENDANT:  Yes, I can, your Honor.

17         THE COURT:  Okay.  Wonderful.

18         I also want to make sure that everyone else on the

19  call can hear me clearly.

20         Mr. Kaminsky, can you hear me clearly?

21         MR. KAMINSKY:  Yes, I can, your Honor.

22         THE COURT:  Ms. Kushner?

23         MS. KUSHNER:  Yes, your Honor.

24         THE COURT:  And, Ms. Surina, our court reporter,

25  importantly?

 1              THE COURT REPORTER:  Yes, your Honor.  Perfectly.

 2    Thank you.

 3              THE COURT:  If at any time any of you cannot hear what

 4    has been said, please interrupt me, and I will interrupt the

 5    proceedings and correct any technological difficulties to make

 6    sure that everybody can hear before we proceed.  Okay?

 7              Mr. Bagaglia, I also want to tell you that if at any

 8    time you wish to speak privately with your lawyer, just

 9    interrupt me, stop the proceedings, and I will give you an

10    opportunity to speak with him privately.  I have the ability to

11    put you into a private telephone room.  So if you need to do

12    that, just let me know.  Okay?

13              THE DEFENDANT:  Okay.  Thank you, your Honor.

14              THE COURT:  All right.  Now, Mr. Kaminsky, you are not

15    physically present with your client?  Is that right?

16              MR. KAMINSKY:  That is correct, your Honor.  He is

17    present with his mother who is a legal guardian of him and is

18    assisting him with the call.  And he's on separately from me.

19              THE COURT:  Okay.  Wonderful.  Now, I want to note for

20    the record that all parties are appearing by telephone.  I want

21    to ask that before you speak, you state your name clearly so

22    that the court reporter can accurately take down who is

23    talking.

24              I also want to note that this telephone line is open

25    to the public and the press on a listen-only basis.  I would

1  ask everyone to be mindful of court rules that prohibit the

2  recording and rebroadcasting of court proceedings, including

3  this one, and that violations of this rule can result in

4  sanctions.  I will also ask the people on the call to mute

5  their phone lines when they are not speaking.  That helps with

6  the reception.

7          As everyone is abundantly aware, we're still in the

8  midst of a COVID pandemic, and I am conducting this proceeding

9  by telephone based on the authority provided under the Cares

10 Act and standing orders issued by the chief judge of this court

11 pursuant to the Cares Act.

12         Under that Act, I find that video conferencing is not

13 reasonably available to conduct this proceeding.  The

14 facilities for video conferencing appearances and pleas are

15 extremely limited, and there is insufficient availability to

16 allow for all persons who wish to use it and no ability to

17 allow defendants like Mr. Bagaglia, who is not currently in

18 custody, to utilize the video conferencing system.

19         In addition, under the Cares Act, in the case of any

20 plea or sentence conducted by phone, the Court must also

21 determine whether this proceeding cannot be further delayed

22 without serious harm to the interests of justice.  I'll note

23 that Judge Schofield, who has referred to this matter to me,

24 has made this finding by a separate order dated September 9,

25 2020.

1          Mr. Kaminsky, can you describe what contact you've had

2    with Mr. Bagaglia to prepare for this plea.

3          Was it by telephone or something else?

4          MR. KAMINSKY:  Yes, your Honor.  I have had several

5    Zoom calls with him, including one this morning.

6          THE COURT:  Okay.  Have you discussed the indictment

7    with him, and has he had a copy of it to read it himself?

8          MR. KAMINSKY:  Yes, your Honor.

9          THE COURT:  Did you discuss with Mr. Bagaglia whether

10   he was willing to consent to proceed with his guilty plea by

11   telephone?

12         MR. KAMINSKY:  Yes, I did, your Honor.  And he

13   consents, and he authorized me to execute the consent form on

14   his behalf.

15         THE COURT:  All right.  Mr. Bagaglia, do you

16   understand that you have a right to have your plea taken in

17   person but that you also have a right to consent to the

18   proceeding by telephone for everybody's safety due to the COVID

19   crisis?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Did you voluntarily consent to proceed

22   today by telephone and to have your lawyer sign your name on

23   the consent form and submit it to the Court?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  All right.  I find that the defendant has

1    voluntarily and knowingly consented to proceed with the plea by

2    phone today. I'm going to sign this consent form on behalf of

3    the Court.

4              Now, I understand, Mr. Bagaglia, that you wish to

5    plead guilty to Count Two of the four-count indictment against

6    you.  Count Two charges you with receipt and distribution of

7    child pornography in violation of Title 18 of the U.S. Code,

8    Sections 2, 2252A(a)(2)(B), and 2252A(b)(1).  Is that correct?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Your lawyer has also submitted a form to

11   me that's entitled Consent to Proceed Before a United States

12   Magistrate Judge on a Felony Plea Allocution.

13             I want to know whether your lawyer discussed that form

14   with you and whether you consented to proceed today before a

15   magistrate judge and authorized your lawyer to sign for you.

16             THE DEFENDANT:  Yes, your Honor.  I did.

17             THE COURT:  All right.  So just to be clear, you

18   understand that you have a right to have your plea taken by a

19   district judge but that as a magistrate judge, I have the

20   authority to take your plea with your consent.  And you're

21   entitled to the same rights and protections as if you were

22   before the district judge, and you will still be sentenced by a

23   district judge.

24             Do you understand that?

25             THE DEFENDANT:  Yes, your Honor.  I do.

1          THE COURT:  And you voluntarily agree to proceed

2    today?

3          THE DEFENDANT:  Yes, your Honor.  I do.

4          THE COURT:  All right.  Your consent is accepted.

5          Before we get started, I'm going to ask the courtroom

6    deputy to place you under oath.

7          (Defendant sworn)

8          THE DEPUTY CLERK:  Sir, can you please state your name

9    for the record.

10          THE DEFENDANT:  My name is Joseph Anthony Bagaglia,

11    IV.

12          THE DEPUTY CLERK:  Thank you very much, sir.

13          THE DEFENDANT:  You're welcome.

14          THE COURT:  Mr. Bagaglia, you've now been placed under

15    oath.  This means that any statements you make here may be used

16    against you by the government in a prosecution for perjury or

17    for making false statements.

18          Do you understand this?

19          THE DEFENDANT:  Yes, your Honor, I do.

20          THE COURT:  I'd like to explain a little bit more

21    about the proceeding today.  I'm going to ask you various

22    questions.  Some are personal in nature, and others are about

23    the crime to which you wish to plead guilty.  I'm also going to

24    review various rights you have and will be giving up by

25    pleading guilty.

1        The purpose of these questions is to make sure that

2   you understand your rights and to make sure that you are

3   voluntarily pleading guilty of your own free will and because

4   you are in fact guilty of the crime to which you are pleading

5   guilty.

6        Do you understand this?

7        THE DEFENDANT:  Yes, your Honor.  I do.

8        THE COURT:  If you don't understand any of my

9   questions or, as I said earlier, if you want time to speak with

10  your lawyer, just interrupt me.  And I will explain or let you

11  speak with your lawyer.  Okay?

12       THE DEFENDANT:  Okay.  Thank you, your Honor.

13       THE COURT:  How old are you?

14       THE DEFENDANT:  I am 26.

15       THE COURT:  Are you a U.S. citizen?

16       THE DEFENDANT:  Yes.

17       THE COURT:  The reason I ask that is because pleading

18  guilty to a felony can have serious immigration consequences to

19  noncitizens.

20       How far did you go in school?

21       THE DEFENDANT:  I graduated, your Honor.

22       THE COURT:  From high school?  College?

23       THE DEFENDANT:  High school, your Honor.

24       THE COURT:  Are you currently or have you recently

25  been under the care of a doctor or mental health professional?

1        THE DEFENDANT:  Yes, your Honor.

2        THE COURT:  For what condition?

3        THE DEFENDANT:  Depression and anxiety, your Honor.

4        THE COURT:  Are you taking any medication for those

5    conditions that impacts your ability to think or make decisions

6    for yourself?

7        THE DEFENDANT:  No, your Honor.  I am on medication,

8    yes.  But they do not impact my thinking, no.

9        THE COURT:  Okay.  Have you been hospitalized for a

10   mental illness?

11       THE DEFENDANT:  Yes, your Honor.

12       THE COURT:  When did that happen?

13       THE DEFENDANT:  When I was ten years old.

14       THE COURT:  Okay.  Since then, you have not been

15   hospitalized?

16       THE DEFENDANT:  No, your Honor.

17       THE COURT:  Okay.  Do you have any condition that

18   affects your ability to see or hear?

19       THE DEFENDANT:  No, your Honor.

20       THE COURT:  Do you have any conditions that affect

21   your ability to make judgments or decisions for yourself?

22       THE DEFENDANT:  Yes, your Honor.

23       THE COURT:  You do have a condition that affects your

24   ability to make judgments and decisions for yourself?

25       THE DEFENDANT:  Yes, your Honor.  I do.

1              THE COURT:  What is that condition?

2              THE DEFENDANT:  PDD-NOS, pervasive developmental

3   disorder otherwise not specified.  I am also on the autistic

4   spectrum.

5              MR. KAMINSKY:  Your Honor, this is Clay Kaminsky,

6   Mr. Bagaglia's counsel.  So he has those psychoses.  And in

7   2012, his parents were appointed as legal guardians for him.

8              THE COURT:  Mr. Kaminsky, are you confident that

9   Mr. Bagaglia is competent to make a decision to plead in this

10  case on his own?

11             MR. KAMINSKY:  Your Honor, we have considered his

12  competence.  I believe that he is competent, and we have been

13  discussing the case, often in conjunction with his parents.

14             THE COURT:  Is his mother also on the line?

15             MR. KAMINSKY:  She is, your Honor.

16             MS. BAGAGLIA:  Yes, your Honor.  I am here.

17             THE COURT:  Ms. Bagaglia, thank you.  I want to ask

18  you a question now.

19             Ms. Bagaglia, do you believe that your son has the

20  competence to understand the nature of this proceeding and to

21  make a decision to plead guilty to this one count in the

22  indictment?

23             MS. BAGAGLIA:  Yes, your Honor.  I do.

24             THE COURT:  Okay.  Thank you.

25             Mr. Bagaglia, have you ever been treated or

1   hospitalized for alcoholism or narcotics addiction?

2              THE DEFENDANT:  No, your Honor.  I have not.

3              THE COURT:  As you sit here today, are you under the

4   influence of any mind-altering drug or alcohol?

5              THE DEFENDANT:  No, your Honor.  I am not.

6              THE COURT:  How are you feeling physically today?

7              THE DEFENDANT:  Tired.  Otherwise, I am doing very

8   well.

9              THE COURT:  Okay.  So do you understand what's

10  happening in this proceeding?

11             THE DEFENDANT:  Yes, I do.

12             THE COURT:  I just heard a beep.

13             Did we lose anybody?  Do we have both counsel on the

14  phone?

15             MS. KUSHNER:  The government is still on, your Honor.

16             MR. KAMINSKY:  As is defense counsel.

17             THE COURT:  Does the government have any objections to

18  Mr. Bagaglia's competence to plead at this time?

19             MS. KUSHNER:  No, your Honor.

20             THE COURT:  The same question.  Mr. Kaminsky, do you

21  have any concerns about your client's competence to plead at

22  this time?

23             MR. KAMINSKY:  No, your Honor.  This is something

24  we've thought about.  No, I don't.

25             THE COURT:  All right.  Mr. Bagaglia, I'm now going to

1   explain certain constitutional rights that you have.  These are

2   rights that you'll be giving up if you enter a plea of guilty.

3   So please listen carefully.

4            Under the Constitution and laws of the United States,

5   you have a right to plead not guilty to the charges contained

6   in this indictment.

7            Do you understand?

8            THE DEFENDANT:  Yes, your Honor.  I do.

9            THE COURT:  If you plead not guilty, you'd be entitled

10  under the Constitution to a speedy and public trial by a jury

11  of the charges against you.  At the trial, you would be

12  presumed innocent, and the government would be required to

13  prove you guilty beyond a reasonable doubt before you could be

14  found guilty.  You could not be convicted unless a jury of 12

15  people agreed unanimously that you are guilty beyond a

16  reasonable doubt.

17           Do you understand what I've just explained?

18           THE DEFENDANT:  Yes, your Honor.  I do.

19           THE COURT:  If you decided to go to trial, at the

20  trial and at every stage of your case, you would have the right

21  to be represented by a lawyer.  If you could not afford a

22  lawyer, one would be appointed to represent you at the

23  government's expense.

24           Even if you retained your own private lawyer, if you

25  ran out of money, a lawyer would be appointed to continue to

1   represent you.  You're entitled to a lawyer all the way through

2   trial and not just for a guilty plea.  Your decision to plead

3   guilty should not depend on whether you can afford to hire a

4   lawyer.

5           Do you understand this?

6           THE DEFENDANT:  Yes, your Honor.  I do.

7           THE COURT:  During a trial, witnesses for the

8   prosecution would have to come to court and testify in your

9   presence where you could see and hear them and your lawyer

10  could cross-examine those witnesses.

11          If you wanted, your lawyer could offer evidence on

12  your behalf, and you would be able to use the Court's power to

13  compel witnesses to come to court to testify in your defense,

14  even if they did not want to come.

15          Do you understand what I've explained?

16          THE DEFENDANT:  Yes, your Honor.  I do.

17          THE COURT:  At a trial, you would have the right to

18  testify at your own defense if you wanted to, but you would

19  also have the right not to testify.  If you decided not to

20  testify, that could not be used against you in any way.  No

21  inference or suggestion of guilt would be permitted from the

22  fact that you did not testify.

23          Do you understand what I've explained?

24          THE DEFENDANT:  Yes, your Honor.  I do.

25          THE COURT:  If you were convicted at trial, you would

1   have the right to appeal that verdict to a higher court.

2            Do you understand?

3            THE DEFENDANT:  Yes, your Honor.  I do.

4            THE COURT:  And as I said before, you have the right

5   to plead not guilty.  So even right now as you sit here today

6   for purposes of entering a guilty plea, you have the right to

7   change your mind, persist in a not guilty plea, and go to

8   trial.

9            But if you do plead guilty and your plea is accepted,

10  you'll give up the right to a jury trial and all the other

11  rights that go with it that I've just described.

12           Do you understand?

13           THE DEFENDANT:  Yes, your Honor.  I do.

14           THE COURT:  Finally, if you do plead guilty, you're

15  giving up the right not to incriminate yourself.  I'm going to

16  ask you questions about what you did in order to satisfy myself

17  that you are actually guilty of the crime asserted in Count Two

18  of the indictment.  By pleading guilty, you'll be admitting to

19  your factual, as well as your legal, guilt.

20           Do you understand this?

21           THE DEFENDANT:  Yes, your Honor.  I do.

22           THE COURT:  I'm now going to review the charge against

23  you and the consequences of pleading guilty.

24           Count Two charges you with receipt and distribution of

25  child pornography on or about December 21 of 2018 in the

1    Southern District of New York and elsewhere in violation of

2    Title 18 of the U.S. Code, Sections 2, 2252A(a)(2)(B), and

3    2252A(b)(1).

4          Ms. Kushner, can you explain the elements of this

5    crime.

6          I also want to make sure, Mr. Bagaglia -- the elements

7    are things that the government has to prove beyond a reasonable

8    doubt at trial in order for you to be convicted of this crime.

9    Okay?

10          THE DEFENDANT:  Okay, your Honor.

11          THE COURT:  All right.  So, Ms. Kushner, go ahead and

12    explain the elements.

13          MS. KUSHNER:  Yes, your Honor.  So the government

14    would be required to prove beyond a reasonable doubt the

15    following three elements:

16          First, that on or about the date charged in the

17    indictment, the defendant knowingly received or distributed

18    materials containing child pornography; second, that the child

19    pornography was transported in interstate or foreign commerce

20    by any means, including by computer; and third, that at the

21    time of such receipt or distribution, the defendant knew that

22    the material constituted child pornography.

23          THE COURT:  Thank you.

24          MS. KUSHNER:  I can define that term if you would

25    like.

 1            THE COURT:  Yes.  Why don't you define that term,

 2    please.

 3            MS. KUSHNER:  Sure.  So for purposes here, the term

 4    "child pornography" means any visual depiction, including any

 5    photographs, films, video of sexually explicit conduct; or the

 6    production of the visual depiction involves the use of a minor

 7    engaging in sexually explicit conduct.

 8            And sexually explicit conduct includes sexual

 9    intercourse, masturbation, and lascivious exhibition of the

10    genitals or pubic area of any person.

11            THE COURT:  Thank you.

12            Mr. Bagaglia, I'm now going to tell you the maximum

13    possible penalty for this crime.  The maximum means the most

14    that could possibly be imposed.  It does not mean that is what

15    you necessarily would receive.  But by pleading guilty, you are

16    exposing yourself to the possibility of receiving any

17    combination of punishments up to the maximum that I'm about to

18    describe.

19            The maximum term of imprisonment for this crime is 20

20    years.  It also carries a mandatory minimum term of

21    imprisonment of five years.  This means a sentencing judge

22    cannot sentence you to less than this.  The charge also carries

23    a maximum term of supervised release of life and a mandatory

24    minimum term of supervised release of five years.

25            Supervised release means that after you're released

1    from prison, you may be subject to supervision by the probation

2    department.  If you're placed on supervised release and then

3    violate any condition of that release, the district judge can

4    revoke the term of supervised release and return you to prison

5    without giving you any credit for the time previously served on

6    post-release supervision.

7            In addition to the restrictions on your liberty, the

8    maximum possible punishment for this crime includes a fine of

9    $250,000, twice the gross monetary gain derived from the

10   offense, or twice the gross monetary loss to persons other than

11   yourself, whichever is greatest.

12           The Court also may order restitution to the victims of

13   the crime in an amount determined by and pursuant to a schedule

14   set by the Court.  And by pleading guilty, you're agreeing to

15   make restitution.

16           The Court may require forfeiture of any proceeds,

17   obtained directly or indirectly, from the crime.  And

18   forfeiture is in addition to any other fine, cost of

19   imprisonment, restitution, or other penalty the Court may

20   impose.  By pleading guilty, you'll be admitting to the

21   forfeiture allegations in the indictment.

22           The Court is required to impose a mandatory special

23   assessment or fine of $100 plus an additional assessment of

24   $5,000 pursuant to Title 18 of the U.S. Code, Section 3014(a).

25           If you were not a citizen of the United States -- you

1   told me that you are a citizen.  But nevertheless, by law, I'm

2   still required to tell you that if you were not, a guilty plea

3   means that you may be removed from the United States and denied

4   admission to the United States or citizenship in the future.

5           A guilty plea also may result in the loss of certain

6   valuable civil rights, to the extent you have them today or

7   could obtain them in the future.  These include the right to

8   vote, the right to hold public office, the right to serve on a

9   jury, and the right to possess any kind of firearm.

10          As a result of a guilty plea, you may be required to

11  register as a sex offender under the sex offender notification

12  act.  This most likely will substantially restrict where you

13  live or work and with whom you may associate in the future.

14          Further, failure to comply with the registration

15  obligations will subject you to federal prosecution for failure

16  to register, which is punishable by a fine, prison, or both.

17          Do you understand everything that I've just explained

18  to you?

19          THE DEFENDANT:  Yes, your Honor.  I do.

20          THE COURT:  Now, Mr. Kaminsky, I want to ask you and

21  Ms. Kushner:  Is there the possibility of civil commitment as a

22  result of a plea in this case?

23          MR. KAMINSKY:  Your Honor, this is Clay Kaminsky.  My

24  understanding is no.

25          THE COURT:  Does the government agree?

1          MS. KUSHNER:  Yes, your Honor.

2          THE COURT:  Mr. Bagaglia, do you understand the charge

3   against you and the consequences of pleading guilty to Count

4   Two of the indictment?

5          THE DEFENDANT:  Yes, your Honor.  I do.

6          THE COURT:  Do you understand that if you enter a

7   guilty plea, you will not be able to withdraw it and that the

8   only step remaining will be for you to be sentenced by the

9   district judge?

10          THE DEFENDANT:  Yes, your Honor.  I do.

11          THE COURT:  Do you understand that even if you're

12   surprised or disappointed by your sentence, that you will still

13   be bound by your guilty plea?

14          THE DEFENDANT:  Yes, your Honor.  I do.

15          THE COURT:  Have you had enough time to talk with your

16   lawyer about the charges against you and how you wish to plead?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Have you had enough time to talk with your

19   lawyer about the consequences of a plea, including any

20   immigration consequences?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Are you satisfied with your lawyer's

23   representation of you?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  I've been presented with a written plea

 1   agreement between you and the government.  It's dated

 2   August 20, 2020.

 3           Mr. Kaminsky, did you review this plea agreement with

 4   your client before today's proceeding and before he signed it?

 5   And did you review all of its terms and conditions with him?

 6           MR. KAMINSKY:  Your Honor, yes.  We did.

 7           THE COURT:  Are you comfortable and confident that

 8   your client understands the terms of the plea agreement?

 9           MR. KAMINSKY:  Yes, your Honor.  I believe so.

10           THE COURT:  Okay.  Mr. Bagaglia, did you read through

11   the plea agreement before you signed it?

12           THE DEFENDANT:  Yes, your Honor.  I did.

13           THE COURT:  Do you understand its terms?

14           THE DEFENDANT:  Yes, your Honor.  I do.

15           THE COURT:  Did your lawyer explain it to you before

16   you signed it?

17           THE DEFENDANT:  Yes, your Honor.  He did.

18           THE COURT:  In the agreement, it states that you and

19   the government have reached an agreement regarding the

20   appropriate calculation of the sentencing range in your case

21   under a part of our law known as the sentencing guidelines.

22           The agreement is that the appropriate guideline

23   sentencing range is from 135 to 168 months in prison with a

24   mandatory minimum term of 60 months.  The sentencing guideline

25   range also provides for a fine range of $35,000 to $350,000.

1          Under the agreement, neither you nor the government is

2   allowed to argue to the sentencing judge for a calculation

3   that's different from the calculated range in the plea

4   agreement.

5          Do you understand this?

6          THE DEFENDANT:  Yes, your Honor.  I do.

7          THE COURT:  I also want to make sure that you

8   understand that the sentencing judge, Judge Schofield, is not

9   bound by the calculations in the plea agreement.

10          In fact, she's obliged to conduct and will conduct her

11   own review of the appropriate sentencing range in your case,

12   and it may differ from the one in the plea agreement.

13          Do you understand that?

14          THE DEFENDANT:  Yes, your Honor.  I do.

15          THE COURT:  Also, so long as Judge Schofield sentences

16   you to a prison term of no longer than 168 months, you are

17   giving up your right to challenge your sentence, whether by

18   direct appeal, writ of habeas corpus, or otherwise.

19          Do you understand?

20          THE DEFENDANT:  Yes, your Honor.  I do.

21          THE COURT:  Under the agreement, you're also agreeing

22   not to appeal any fine of $350,000 or less.  And you're also

23   agreeing not to appeal any lawful sentence of supervised

24   release.  And you're also agreeing not to appeal any mandatory

25   fine of $100 or the special assessment of $5,000.

1        This means that you can't directly appeal it or

2   challenge these aspects of your sentence collaterally, such as

3   through a petition for habeas corpus.

4        Do you understand this?

5        THE DEFENDANT:  Yes, your Honor.  I do.

6        THE COURT:  Mr. Bagaglia, apart from what is contained

7   in the plea agreement itself, have any promises been made to

8   you in order to get you to plead guilty?

9        THE DEFENDANT:  No, your Honor.

10        THE COURT:  Have any promises been made to you about

11   the actual sentence you will receive in order to get you to

12   plead guilty?

13        THE DEFENDANT:  No, your Honor.

14        THE COURT:  Has anyone threatened you or tried to

15   coerce to you plead guilty?

16        THE DEFENDANT:  No, your Honor.

17        THE COURT:  Under the plea agreement, it says that if

18   you later learned that the government withheld from your

19   counsel certain information that would have been helpful to you

20   in defending yourself at trial, you're not going to be able to

21   complain about that or withdraw your guilty plea on that basis.

22        Do you understand?

23        THE DEFENDANT:  Yes, your Honor.  I do.

24        THE COURT:  Now, do you also understand that the

25   sentencing judge could impose a more severe sentence than you

1    expect and you won't be able to withdraw your plea of guilty at

2    that time?

3              Do you understand that?

4              THE DEFENDANT:  Yes, your Honor.  I do.

5              THE COURT:  In determining an appropriate sentence,

6    Judge Schofield will make her own individual determination of

7    the appropriate sentencing range under the guidelines.  She'll

8    have discretion to give you a sentence below or above the range

9    up to the maximum sentence I told you about earlier.

10             In addition, she'll consider possible departures under

11   the sentencing guidelines and the factors set forth in Title 18

12   of the United States Code, Section 3553(a).

13             She'll also consider a presentence report prepared by

14   the probation department.  And before your sentence, you and

15   the government will have an opportunity to challenge any facts

16   reported by the probation officer.

17             Ultimately, the sentencing judge will determine your

18   sentence based on all of the factors I've explained, and that

19   sentence may be more severe than you expect.  But you won't be

20   able to withdraw your guilty plea.

21             Do you understand?

22             THE DEFENDANT:  Yes, your Honor.  I do.

23             THE COURT:  Now, under the plea agreement, you're

24   admitting to the forfeiture allegations in the indictment and

25   agreeing to forfeit to the United States government a sum of

1   money representing proceeds traceable to the commission of the

2   offense and all right, title, and interest in a Sandisk 32 GB

3   SD card that you brought from Rhode Island to New York and a

4   red Apple iPhone that you used to contain, receive, and/or

5   distribute child pornography.

6           Under the agreement, you are agreeing not to file a

7   claim or a petition for remission or mitigation in any

8   forfeiture proceeding and to take steps to pass clear title to

9   any forfeitable property to the United States.

10          You're also agreeing to entry of a consent order of

11  forfeiture and agree that the consent order should be final and

12  binding when it is ordered by the Court.

13          Do you understand all of this?

14          THE DEFENDANT:  Yes, your Honor.  I do.

15          THE COURT:  Under the plea agreement, you're agreeing

16  to make restitution determined by the Court.

17          Do you understand?

18          THE DEFENDANT:  Yes, your Honor.  I do.

19          THE COURT:  As mentioned earlier, if you were not a

20  citizen, a guilty plea would presumptively result in your

21  mandatory deportation and removal from the United States.

22          And you would not have a right to withdraw your plea

23  by virtue of any adverse immigration consequences, regardless

24  of any advice that you've received.  And you're agreeing not to

25  challenge your conviction or any sentence based on adverse

1    immigration consequences.

2            This plea agreement also does not bind any other

3    prosecution office, other than the United States Attorney's

4    Office for the Southern District of New York.

5            Mr. Kaminsky, is there any other provision of the plea

6    agreement that you'd like me to go over with your client to

7    make sure he understands it?

8            MR. KAMINSKY:  No.  I don't think so.  Thank you, your

9    Honor.

10           THE COURT:  Ms. Kushner, is there any other provision

11   of the plea agreement that you'd like me to review?

12           MS. KUSHNER:  No, your Honor.  But I realize that the

13   consent order of forfeiture wasn't attached, which is my fault.

14           Should I email that to your chambers today or to

15   Judge Schofield?

16           THE COURT:  Yes.  You can email that to my chambers.

17           MS. KUSHNER:  Thank you.

18           THE COURT:  Mr. Bagaglia, now that you've been advised

19   of the charges against you and the possible penalties you face

20   and the rights you're giving up, do you still wish to plead

21   guilty to Count Two of the indictment?

22           THE DEFENDANT:  Yes, your Honor.  I do.

23           THE COURT:  Are you making this decision voluntarily

24   and of your own free will?

25           THE DEFENDANT:  Yes, your Honor.  I am.

1          THE COURT:  With respect to this count, Count Two, how

2     do you plead?  Guilty or not guilty?

3          THE DEFENDANT:  Guilty, your Honor.

4          THE COURT:  Are you pleading guilty because you

5     in fact committed the offense asserted in Count Two?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Can you tell me in your own words what you

8     did that makes you guilty of the crime charged in Count Two.

9          THE DEFENDANT:  In and around December 21, I sent a

10    video of child pornography to an undercover agent located in

11    Manhattan.  I sent the video over Kik Messenger via the

12    internet.  I am sorry that this happened.

13         THE COURT:  This was in 2018?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  Mr. Kaminsky, do you believe that there's

16    a sufficient factual predicate for a guilty plea?

17         MR. KAMINSKY:  I do, your Honor.  Yes.

18         THE COURT:  Are there any other questions you'd like

19    me to ask your client?

20         MR. KAMINSKY:  No.  Thank you, your Honor.

21         THE COURT:  And are you aware of any defense that

22    would prevail at trial or other reason why Mr. Bagaglia should

23    not be permitted to plead guilty to this count?

24         MR. KAMINSKY:  No, your Honor.

25         THE COURT:  Ms. Kushner, do you believe there's a

1    sufficient factual predicate for a guilty plea?

2          MS. KUSHNER:  Yes, your Honor.  I would just note that

3    in the indictment, it says that two videos were sent that day.

4    I believe Mr. Bagaglia just mentioned one.  Even if it was just

5    one, I believe that this is sufficient.

6          THE COURT:  Mr. Bagaglia, are you admitting to sending

7    one or two videos by Kik Messenger?

8          THE DEFENDANT:  Two videos, your Honor.

9          THE COURT:  Ms. Kushner, I think I asked you.

10         Are there any other questions you'd like me to ask

11   Mr. Bagaglia?

12         MS. KUSHNER:  No, your Honor.

13         THE COURT:  Do you represent that you have sufficient

14   evidence to establish guilt beyond a reasonable doubt at trial?

15         MS. KUSHNER:  Yes, your Honor.  And I'm happy to

16   discuss some of the evidence that would be presented at trial.

17         THE COURT:  Sure.

18         MS. KUSHNER:  So at trial, the government's evidence

19   would include, among other things, testimony from the

20   undercover agent who received the child pornography from the

21   defendant via messenger application.

22         The evidence would also include chats between the

23   defendant and an undercover agent in 2018, December of 2018,

24   including the chats in which the defendant sent the undercover

25   two videos containing child pornography.

1          There would also be other chats from December of 2018

2     showing that the defendant believed he was talking to the

3     father of a nine-year-old girl and that the defendant and the

4     purported father spoke about the defendant meeting and having

5     sex with the nine-year-old girl.

6          There would also be a recording or recordings of

7     December 2018 and I believe January 2019 phone calls between

8     the defendant and the undercover agent, again talking about the

9     defendant coming down I believe from Rhode Island to visit the

10    undercover and have sex with the purported nine-year-old girl.

11         There would also be evidence that in January 2019, the

12    defendant in fact traveled from Rhode Island to New York to

13    meet the purported father and nine-year-old girl.

14         When he was arrested at Penn Station by an undercover

15    agent there, an SD, like a computer card, containing child

16    pornography, condoms, and children's toys were recovered on the

17    defendant's person.  And the defendant's iPhone, which was also

18    recovered at the time of the arrest, contained child

19    pornography.

20         The evidence would also show approximately the number

21    of photo and video files of child pornography that were

22    recovered from the defendant's devices.

23         Finally, the defendant's own post-arrest statements,

24    including that he sent child pornography to others on a

25    messenger application, would be introduced.

1          With respect to venue, evidence would show that these

2     chats and the exchange of child pornography happened over the

3     internet and that also the defendant was communicating with the

4     undercover agent while the defendant was outside the state of

5     New York and the undercover was located in New York, including,

6     at times, in the Southern District of New York.

7          THE COURT:  Thank you, Ms. Kushner.

8          Mr. Bagaglia, is there anything about this proceeding

9     or what's been said so far that you don't understand?

10         THE DEFENDANT:  No, your Honor.  I understand all of

11    it.

12         THE COURT:  Okay.  On the basis of your responses to

13    my questions and my assessment of your demeanor during this

14    proceed, I find that you are competent to enter a guilty plea.

15         I'm satisfied that you understand your rights,

16    including your right to go to trial; that you're aware of the

17    consequences of your plea, including the sentence that may be

18    imposed; and that you are voluntarily pleading guilty and that

19    you've admitted you are guilty as charged to Count Two of the

20    indictment.  For these reasons, I'll recommend that

21    Judge Schofield accept your plea.

22         I'm going to direct the government to order a copy of

23    the transcript and submit it to Judge Schofield so that she can

24    act on my recommendation.

25         Has Judge Schofield sent a sentencing date?

1          MS. KUSHNER:  She has not, your Honor.

2          THE COURT:  All right.  I'm going to set a control

3   date of January 15, 2021.

4          Is that okay?

5          MS. KUSHNER:  Yes, your Honor.  You said January 15?

6          THE COURT:  January 15.

7          MS. KUSHNER:  Okay.

8          THE COURT:  I also am going to direct a presentence

9   report be prepared.

10          Ms. Kushner, can you deliver a case summary to the

11   probation department for purposes of preparation of a

12   presentence report?

13          MS. KUSHNER:  Yes, your Honor.

14          THE COURT:  Mr. Kaminsky, I assume you'll be available

15   to be interviewed by the probation department with your client

16   in the near future.

17          MR. KAMINSKY:  Yes, your Honor.

18          THE COURT:  Are there any objections to continuing the

19   present conditions of release?

20          MS. KUSHNER:  Your Honor, for this crime, there is a

21   mandatory remand pursuant to Title 18, U.S. Code, Section

22   3143(a)(2).  So unless exceptional reasons why Mr. Bagaglia's

23   detention at this moment would not be appropriate, the statute

24   requires that he be remanded.

25          THE COURT:  Go ahead, Mr. Kaminsky.

1           MR. KAMINSKY:  Your Honor, two things:  First,

2    mandatory remand would not attach until Judge Schofield accepts

3    the plea.  That's the first.

4           The second is that there are exceptional reasons.

5    There are absolutely exceptional reasons.  The reason we're

6    holding this plea remotely is because there is a national

7    pandemic and because Mr. Bagaglia, in particular, because of

8    his severe obesity and his hypertension, is at high risk from

9    COVID-19 if he were remanded.

10          So put that together with his nearly two years now --

11   I guess it's a year and a half -- of flawless compliance with

12   pretrial supervision, and I think there is absolutely clear and

13   convincing evidence that the current conditions are sufficient.

14   And there are exceptional reasons in the form of the pandemic

15   why continued bail is appropriate.

16          THE COURT:  All right.  Mr. Kaminsky, I take it that

17   you're suggesting that under 18 U.S. Code, Section 3145(c) that

18   there are reasons to maintain the current conditions of release

19   until sentencing.

20          Is that right?

21          MR. KAMINSKY:  That's right, your Honor.

22          THE COURT:  Okay.  And under that section, somebody

23   who meets the conditions of release can be ordered released

24   under appropriate conditions if it's clear that there are

25   exceptional reasons why the person's detention would not be

1   appropriate.

2          Under the provision, as you know, the Court must find

3   under clear and convincing evidence that the person is not

4   likely to flee or pose a danger to the safety of any other

5   person or the community.

6          Exceptional reasons are those that present a unique

7   combination of circumstances giving rise to situations that are

8   out of the ordinary.  And I'm citing *U.S. v. DiSomma*, 951 F.2d

9   494 at 497 (2d Cir. 1991).

10          This determination is made on a case-by-case basis.

11   And other judges in this district have recognized that the

12   heightened threat posed by COVID-19 to an inmate with

13   underlying health conditions in a facility with confirmed cases

14   of COVID presents such unique circumstances.

15          So, one, I agree that mandatory remand is not

16   appropriate until the district judge does in fact accept the

17   plea; and two, I would find extraordinary or exceptional

18   circumstances at this point up until Judge Schofield has a

19   chance to consider my recommendation and make her own decisions

20   on this.

21          So for those reasons, the current conditions of

22   release will apply until otherwise ordered by Judge Schofield.

23          MR. KAMINSKY:  Thank you, your Honor.

24          THE COURT:  I just want to remind you, Mr. Bagaglia,

25   that you need to continue to comply, as you have been doing,

1    with the conditions of your release and that failure to comply

2    can have serious consequences.  Okay?

3              THE DEFENDANT:  Yes, your Honor.  Thank you.

4              THE COURT:  Is there anything further from the

5    government?

6              MS. KUSHNER:  Nothing further from the government,

7    your Honor.

8              THE COURT:  Anything further, Mr. Kaminsky?

9              MR. KAMINSKY:  No, your Honor.  Thank you.

10             THE COURT:  All right.  Very good.  I hope everybody

11   continues to stay healthy, and we are adjourned.

12             (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25